# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2345

_____

United States of America,           *
                                  *
        Petitioner - Appellant,   *
                                  *   Appeal from the United States
    v.                          *   District Court for the
                                  *   District of Minnesota.
Roger Dean Tom,             *
                                  *
        Respondent - Appellee.   *

_____

Submitted: March 12, 2009
Filed: May 13, 2009

_____

Before MURPHY, MELLOY, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

Roger Dean Tom pled guilty to one count of aggravated sexual abuse of a minor and was sentenced by the district court to 120 months imprisonment and 60 months supervised release. Two days before the end of his prison term the United States filed a petition under 18 U.S.C. § 4248 to have him civilly committed as a "sexually dangerous person." The district court granted Tom's motion to dismiss the petition after concluding that the authorizing legislation was unconstitutional. The United States appeals, and we reverse.

In 1997 Tom pled guilty in the United States District Court for the District of Utah to one count of aggravated sexual abuse of a minor in violation of 18 U.S.C. § 2241(c), a statute making it illegal to cross state lines with intent to engage in a sexual act with a minor. Tom was sentenced to 120 months in prison and 60 months supervised release and assigned by the Bureau of Prisons (BOP) to the Federal Medical Center (FMC) in Rochester, Minnesota. His scheduled release date was October 4, 2006, but his release was stayed on October 2 after the United States filed a petition in the federal district court in Minnesota under 18 U.S.C. § 4248. That provision, a part of the Adam Walsh Child Protection and Safety Act of 2006 (Adam Walsh Act), Pub. L. No. 109-248, § 302, 120 Stat. 587, 620-22, requires a district court to stay pending a hearing the release of an inmate certified by the BOP as a "sexually dangerous person." The petition alleges that the FMC Rochester mental health staff had examined Tom and determined that he is such a sexually dangerous person.

The district court appointed a federal defender to represent Tom and scheduled a hearing to determine whether there was clear and convincing evidence that Tom is a sexually dangerous person. Tom moved to dismiss the proceeding, arguing that § 4248 was unconstitutional because neither the Commerce Clause nor the Necessary and Proper Clause of the United States Constitution authorized its enactment, it violates the Due Process and Equal Protection Clauses, and it is a criminal sanction requiring the government to establish sexual dangerousness beyond a reasonable doubt.

Relying primarily on United States v. Morrison, 529 U.S. 598 (2000), and United States v. Lopez, 514 U.S. 549 (1995), the district court concluded that Congress exceeded its Commerce Clause authority by enacting § 4248 because the statute "is unrelated to economics but rather aims to regulate and prevent

noneconomic criminal conduct that traditionally has been the province of the States" and lacks a "jurisdictional element to ensure its application only to situations involving interstate commerce . . . ." The district court was also unpersuaded by the argument that "§ 4248 is necessary and proper for effectuating a constitutionally vested power." Tom's motion to dismiss was granted, and his release stayed by this court pending resolution of the appeal filed by the United States.

B.

Congress enacted the Adam Walsh Act in order to "[t]o protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, [and] to promote Internet safety . . . ." 120 Stat. at 587. Its legislative history makes clear that the Act was designed to be a "comprehensive bill to address the growing epidemic of sexual violence against children" and to "address loopholes and deficiencies in existing laws." H.R. Rep. No. 109-218, pt. 1 (2005). A Senate sponsor described the Act as "the most comprehensive child crimes and protection bill in our Nation's history." 152 Cong. Rec. S8012-02 (daily ed. July 20, 2006) (statement of Sen. Hatch). Among other measures, the Act strengthens federal criminal penalties for sexually exploitive and violent crimes against children, see, e.g., § 206, 120 Stat. at 613 (codified as amended at 18 U.S.C. § 2241 (2006)), establishes a National Sex Offender Registry, see § 119, 120 Stat. at 596 (codified at 42 U.S.C. § 16919 (2006)), and creates the civil commitment procedures at issue here, see § 302, 120 Stat. at 620-22 (codified at 18 U.S.C. § 4248 (2006)).

Title III of the Adam Walsh Act amends and supplements already existing civil commitment provisions, see, e.g., 18 U.S.C. §§ 4241, 4243-4246, to authorize the federal government to seek a court order that a person in its custody is "sexually dangerous" and if so, a civil commitment order, see § 4248. The Act defines a sexually dangerous person as "a person who has engaged or attempted to

engage in sexually violent conduct or child molestation and who is sexually dangerous to others." § 4247(a)(5). A person is sexually dangerous to others if he "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." § 4247(a)(6). The terms "sexually violent conduct" and "child molestation" are not defined by the statute.

The civil commitment process begins when the Attorney General, an individual authorized by the Attorney General, or the Director of the BOP certifies a person as sexually dangerous. § 4248(a). The government is authorized to initiate civil commitment proceedings against three categories of individuals: (1) a person committed to its custody because he is "suffering from a mental disease or defect rendering him . . . unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense;" (2) a person "against whom all criminal charges have been dismissed solely for reasons relating to the mental condition of the person;" or (3) a person who is in the custody of the BOP. § 4248(a). Tom falls within the third category.

Upon such a certification the release of the person in custody is stayed, and a district court must initiate a hearing in order to determine whether the individual is in fact sexually dangerous. § 4248(a). Prior to the hearing the district court is authorized to order a psychiatric examination of the individual, the result of which may be filed with the court. § 4248(b). The subject of the hearing shall be provided counsel if he cannot afford "adequate representation" and may testify, present evidence, subpoena witnesses, and confront and cross examine witnesses. § 4247(d).

If the district court finds by clear and convincing evidence that the individual was accurately certified as a sexually dangerous person, it must commit the person to the custody of the Attorney General. § 4248(d). Upon obtaining custody of the individual, the Attorney General must release him to the state where

-4-

he was tried or the state of his domicile if either state will "assume responsibility for his custody, care, and treatment." Id. If despite "all reasonable efforts" neither state will "assume such responsibility," the Attorney General must retain custody of the sexually dangerous person in a "suitable facility" until either state agrees to take him, § 4248(d)(1), he is no longer sexually dangerous, § 4248(d)(2), or he will not be sexually dangerous if released under a prescribed course of treatment, id.

Once a person has been committed under § 4248, the director of the facility where he has been placed must submit an annual report to the district court with a recommendation about whether there is a need for his continued confinement. § 4247(e)(B). If the director determines that a committed person is no longer sexually dangerous to others, or will not be sexually dangerous to others if released under a prescribed regimen of care, she must certify that to the district court, which must then order the person's discharge or hold a hearing to determine whether the person should be released. § 4248(e). Counsel for the civilly committed or his legal guardian may also move the committing district court for a hearing to determine whether the person should be released. § 4247(h). If after such a hearing the district court determines by a preponderance of the evidence that the person is no longer sexually dangerous, it may order his unconditional release. § 4248(e)(1). The district court may also order a conditional release after a finding that the person will not be sexually dangerous to others if released under a prescribed regimen of care, § 4248(e)(2), in which case the release is subject to revocation, § 4248(f).

C.

The only appellate court to have yet addressed the constitutionality of § 4248 in a published opinion is the Fourth Circuit. In United States v. Comstock, 551 F.3d 274, 279-80 (4th Cir. 2009), the court concluded that the provision was unconstitutional after determining that § 4248 regulated neither economic activity nor activities substantially affecting interstate commerce and was therefore beyond

the reach of the Commerce Clause. The Fourth Circuit also rejected the government's argument that the Necessary and Proper Clause "standing alone," untethered to "powers specifically enumerated in the Constitution" could authorize the legislation. Id. at 280.

The district courts which have addressed the constitutionality of § 4248 have divided on the question. In addition to the Minnesota district court order currently under review, district courts in Massachusetts and North Carolina have concluded that § 4248 is unconstitutional. See United States v. Volungus, 599 F. Supp. 2d 68, 77-78 (D. Mass. 2009) (Section 4248 regulates noneconomic behavior and encroaches upon state police power; thus, beyond "proper scope of congressional power conferred by the Necessary and Proper Clause as a means to exercise congressional authority granted under the Commerce Clause"); United States v. Comstock, 507 F. Supp. 2d 522, 540-51 (E.D.N.C. 2007) (Congress lacked authority under either Commerce Clause or Necessary and Proper Clause to enact § 4248; statute "unnecessarily and improperly deprives the states of parens patriae and police powers and impermissibly intrudes upon an area historically regulated by the states"), aff'd, 551 F.3d at 285.

In contrast, district courts in Hawaii, Massachusetts, and Oklahoma have upheld § 4248 as a valid exercise of Congress's legislative power. See United States v. Abregana, 574 F. Supp. 2d 1123, 1128 (D. Haw. 2008) ("Section 4248 was validly enacted as a necessary and proper exercise of the United States' power to prevent the future commission of federal crimes."); United States v. Carta, 503 F. Supp. 2d 405, 408 (D. Mass. 2007) (same); United States v. Dowell, No. CIV-06-1216-D, 2007 WL 5361304, at *6-7 (W.D. Okla. Dec. 5, 2007) (same). A fourth district court upheld § 4248 on similar grounds, see United States v. Shields, 522 F. Supp. 2d 317, 326 (D. Mass. 2007), but concluded that the statute violated due process, id. at 331.

The parties' arguments on appeal resemble those made before these other courts. The United States argues primarily that § 4248 is "necessary and proper to the operation of the federal prison system and the federal criminal justice system" and "a necessary and proper means of preventing federal crimes." Tom counters that neither the Commerce Clause nor the Necessary and Proper Clause authorize its enactment and that it encroaches upon the powers reserved to the states by the Tenth Amendment.

II.

A.

Our review of the district court's conclusion that § 4248 is unconstitutional is de novo. United States v. Garcia, 521 F.3d 898, 901 (8th Cir. 2008). Nevertheless, "[d]ue respect for the decisions of a coordinate branch of Government demands that we invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." Morrison, 529 U.S. at 607. "The powers of the legislature are defined, and limited," Marbury v. Madison, 5 U.S. (1 Cranch) 137, 176 (1803), and "[e]very law enacted by Congress must be based on one or more of its powers enumerated in the Constitution," Morrison, 529 U.S. at 607. Those that fall outside the scope of the powers conferred upon Congress are invalid. Id. Congress did not identify any particular constitutional source on which it relied in enacting the civil commitment provision of the Adam Walsh Act.

While the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, was construed narrowly in the early years of our nation, it has been afforded a rather expansive interpretation in the modern era. See Lopez, 514 U.S. at 553-59. In Lopez the Supreme Court identified "three broad categories of activity that Congress may regulate" through the Commerce Clause: (1) "the use of the channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce;" and (3) "activities having a substantial relation to

interstate commerce, i.e., those activities that substantially affect interstate commerce." Id. at 558 (citation omitted).

Congress is also authorized by the Necessary and Proper Clause, U.S. Const. art. I., § 8, cl. 18, "[t]o make all Laws which shall be necessary and proper for carrying into Execution" its enumerated powers. That provision confers upon Congress "the right to legislate on that vast mass of incidental powers which must be involved in the constitution" lest the Constitution be rendered "a splendid bauble." M'Culloch v. Maryland, 17 U.S. (4 Wheat.) 316, 420-21 (1819). The M'Culloch Court established the operative test for determining whether legislation is authorized by the Necessary and Proper Clause: "Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional." Id. at 421. More recently, Justice Scalia explained that "[t]he relevant question is simply whether the means chosen are reasonably adapted to the attainment of a legitimate end under the commerce power." Gonzales v. Raich, 545 U.S. 1, 37 (2005) (Scalia, J., concurring) (quotation omitted).

That Congress has the authority under the Necessary and Proper Clause to criminalize and punish certain activities as a means of effectuating its enumerated powers is beyond dispute. See Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 393 (1940) ("Congress may impose penalties in aid of the exercise of any of its enumerated powers."); United States v. Fox, 95 U.S. 670, 672 (1877) ("There is no doubt of the competency of Congress to provide, by suitable penalties, for the enforcement of all legislation necessary or proper to the execution of powers with which it is entrusted."); United States v. Plotts, 347 F.3d 873, 879 (10th Cir. 2003) ("[P]ursuant to the Necessary and Proper Clause, Congress may fashion penalties for the violation of valid federal laws."). Indeed, Title 18 of the United States Code contains a vast number of criminal statutes enacted to give effect to

Congress's enumerated powers, including those proscribing various sex offenses. See, e.g., 18 U.S.C. §§ 2241-2248, 2251-2260A.

We recently addressed Congress's legislative authority under the Commerce and Necessary and Proper Clauses in the context of the Adam Walsh Act. In United States v. May, 535 F.3d 912, 922 (8th Cir. 2008), we concluded that 18 U.S.C. § 2250(a), a provision of the Sex Offender Registration and Notification Act (SORNA) which criminalizes the failure to register as a sex offender, did not violate the Commerce Clause. We reached this decision because the statute under review "requires the government to prove [the individual] traveled in interstate or foreign commerce" and "thus derives its authority from each prong of Lopez – and most specifically, the ability to regulate 'persons or things in interstate commerce' and 'the use of the channels of interstate commerce.'" Id. at 921. As we explained, "[i]t has been long established [that] Congress may forbid or punish [the] use of interstate commerce 'as an agency to promote immorality, dishonesty or the spread of any evil or harm to the people of other states from the state of origin.'" Id. (quoting Brooks v. United States, 267 U.S. 432, 436 (1925)).

In United States v. Howell, 552 F.3d 709, 717 (8th Cir. 2009), we concluded that SORNA's registration requirement, 42 U.S.C. § 16913, was validly enacted under the Necessary and Proper Clause. Like Tom, the Howell appellants argued that § 16913 was "unconstitutional because it regulate[d] purely non-economic, intrastate activity by requiring registration of sex offenders who were convicted of state offenses but never cross[ed] state lines." Id. at 713. In rejecting this contention we explained that SORNA "further[ed] a legitimate end under the commerce clause" – the tracking of the interstate movement of sex offenders. Id. at 715-16. We then determined that SORNA's "registration requirements are reasonably adapted to the legitimate end of regulating 'persons or things in interstate commerce' and 'the use of the channels of interstate commerce.'" Id. at 717 (quoting Lopez, 514 U.S. at 558-89). We concluded therefore that "§ 16913 is constitutional under Congress's authority to use the necessary and proper means to

further its commerce clause power because it 'is a necessary part of a more general regulation of interstate commerce.'" Id. (quoting Raich, 545 U.S. at 37 (Scalia, J., concurring)).

The Supreme Court's decision in Greenwood v. United States, 350 U.S. 366 (1956), which affirmed a decision of this court, see Greenwood v. United States, 219 F.2d 376 (8th Cir. 1955) (en banc), is also instructive. Greenwood had been indicted on a federal offense but found incompetent to stand trial. Greenwood, 350 U.S. at 369-70. Thereafter he was civilly committed and placed in the custody of the Attorney General. Id. at 372. Greenwood's civil commitment was authorized by 63 Stat. 686, an Act "[t]o provide for the care and custody of insane persons charged with or convicted of offenses against the United States," id. at 367, the codified provisions of which were similar to § 4248. For example, one section authorized a procedure to determine the mental competency of a person "after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation." Id. Another section provided for the pretrial civil commitment of a person found incompetent to stand trial. Id. at 367-68. A third provision authorized the civil commitment of a "prisoner whose sentence is about to expire" when the director of the BOP determines that "the prisoner is insane or mentally incompetent, and that if released he will probably endanger the safety of the officers, the property, or other interests of the United States, and that suitable arrangements for the custody and care of the prisoner are not otherwise available . . . ." Id. at 368 n.3.

The Supreme Court concluded that Congress was empowered by the Necessary and Proper Clause to enact legislation authorizing such civil commitment of a person incompetent to stand trial. As Justice Frankfurter wrote:

> The power that put him into such custody – the power to prosecute for federal offenses – is not exhausted. Its assertion in the form of the pending indictment persists. The District Court has found that the

accused is mentally incompetent to stand trial at the present time and that, if released, he would probably endanger the officers, property, or other interests of the United States - and these findings are adequately supported. . . . This commitment, and therefore the legislation authorizing commitment in the context of this case involve an assertion of authority, duly guarded, auxiliary to incontestable national power. As such it is plainly within congressional power under the Necessary and Proper Clause.

Id. at 375.

Although Greenwood was confined to "the narrow constitutional issue raised by the order of commitment in the circumstances of th[at] case," id., we nevertheless conclude that it, along with May and Howell are dispositive of the issue under consideration. Tom does not dispute that he was convicted and incarcerated pursuant to a federal sex crime statute, § 2241(c) – prohibiting the crossing of state lines with the intent to engage in a sexual act with a minor – which Congress had constitutional authority to enact under the Commerce Clause. See May, 535 F.3d at 921-22 (Congress may broadly regulate three categories of interstate commerce to prevent its use for immoral purposes). The sole remaining question then is whether § 4248 is a rational and appropriate means for effectuating § 2241(c) and related statutes Congress was authorized to enact.

We conclude that like the SORNA provision under consideration in Howell and the civil commitment provision under consideration in Greenwood, § 4248 is a rational and appropriate means to effectuate legislation authorized by the Constitution. See Raich, 545 U.S. at 35 (Scalia, J., concurring) ("Where necessary to make a regulation of interstate commerce effective, Congress may regulate even those intrastate activities that do not themselves substantially affect interstate commerce."); United States v. Darby, 312 U.S. 100, 121 (1941) (legislation is sustained "when the means chosen, although not themselves within the granted

power, [are] nevertheless deemed appropriate aids to the accomplishment of some purpose within an admitted power of the national government").

Congress has determined that providing for the civil commitment of persons in a variety of circumstances is necessary and proper to the functioning of federal criminal laws. 18 U.S.C. § 4241 authorizes the civil commitment of a defendant "suffering from a mental disease or defect rendering him . . . unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4243 provides for the civil commitment of persons found not guilty by reason of insanity. In appropriate cases 18 U.S.C. § 4244 authorizes the civil commitment, in lieu of imprisonment, of a person found guilty for the maximum period allowed for the offense committed. 18 U.S.C. § 4245 allows the government to seek the temporary civil commitment of a federal prisoner suffering from a mental disease or defect requiring hospitalization. The civil commitment of a hospitalized person whose term of incarceration is about to expire, who has been previously committed under § 4241, or against whom all charges have been dismissed by virtue of insanity, and who "suffer[s] from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another" is authorized by 18 U.S.C. § 4246.

The nexus between these statutes and the enforcement of duly authorized federal criminal laws is evident. In each case the operation of the underlying federal criminal law would be frustrated without the related civil commitment provision. Otherwise, the power to prosecute or punish could be defeated, <u>see</u> <u>Sunshine Anthracite</u>, 310 U.S. at 393, or the opportunity to prevent a federal crime could be lost, <u>see</u> <u>United States v. Perry</u>, 788 F.2d 100, 111 (3d Cir. 1986) ("[B]ecause Congress has the power to proscribe the activities in question, it has the auxiliary authority, under the necessary and proper clause, to resort to civil commitment to prevent their occurrence."). We reach a similar conclusion with regard to § 4248.

-12-

Tom, like the petitioner in <u>Greenwood</u>, is alleged to suffer from a severe mental condition rendering him a menace to members of the general public, including children.  Moreover, like the petitioner in <u>Greenwood</u>, federal power over Tom has not yet been exhausted for he was sentenced to a 60 month term of supervised release which had yet to begin at the time he was certified as a sexually dangerous person.  <u>See</u> 18 U.S.C. § 3583 ("The Court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment . . . .").  As § 3583 makes clear, the federal government retains a vast amount of power over criminal defendants subject to a term of supervised release that is not dissimilar from the power to prosecute.  For example, the court may require the defendant to participate in a rehabilitation program, comply with the requirements of SORNA, and submit to periodic drug testing.  § 3583(d).  The defendant may be required to submit his person and property to warrantless search.  § 3583(d)(3).  The court may modify or extend a term of supervised release.  § 3583(e)(1)-(4).  Of most significance, the court may revoke the term of supervised release altogether and require the defendant to complete it in prison.  § 3583(e)(3).  In such a case the defendant could be subject to a new term of supervised release following the completion of his prison term.  § 3583(h).

Accordingly, we conclude that Congress, having been empowered by the Commerce Clause to criminalize and punish the conduct of which Tom is guilty, has the ancillary authority under the Necessary and Proper Clause to provide for his civil commitment so that he may be prevented from its commission in the first place.  As we explained in <u>Greenwood</u>,

> The national government has the undoubted right to define federal crimes; to provide for the administration and enforcement of its criminal laws; to prescribe the penalties which will be incurred by those violating them; to furnish institutions where such violators can be confined; and generally to do whatever reasonably and lawfully can be done to protect society against such offenders.  We have no

-13-

doubt that as a necessary incident to the power to provide for the enforcement of the criminal laws of the United States, Congress had the power to enact the legislation in suit providing means for the commitment to the custody of the Attorney General of insane or mentally incompetent persons . . . .

219 F.2d at 387; see also United States v. Salerno, 481 U.S. 739, 747 (1987) ("There is no doubt that preventing danger to the community is a legitimate regulatory goal.").

It is true that § 4248 does not contain an explicit interstate travel requirement like the SORNA provision under consideration in May and that individuals committed under it might be prevented from committing state crimes in addition to federal crimes. This does not, however, render the legislation constitutionally defective. First, the Supreme Court "ha[s] never required Congress to legislate with scientific exactitude." Raich, 545 U.S. at 17; see also Greenwood, 219 F.2d at 387 ("When the federal government exerts any of its constitutional powers, no valid objection can be based upon the fact that such exercise" may be accomplished by a state through the use of its police power) (quotation omitted). Second, even were "exactitude" required, the Adam Walsh Act civil commitment provision applies to a restricted universe of individuals – those who have been charged with or convicted of a federal crime, see § 4248(a), and "have serious difficulty in refraining from sexually violent conduct or child molestation," see § 4247(a)(6) – who because of the nature of their proclivities are likely to commit federal crimes.

A propensity to engage in sexually violent conduct or child molestation can hardly be disassociated from the likelihood that a person may commit other types of sex related crimes that fall within federal jurisdiction, such as those involving internet child pornography, see 18 U.S.C. § 2252, or the use of the internet to solicit sexual activity from a minor, see 18 U.S.C. § 2422(b). As a Senate report indicates, by one estimate more than 50% of child molesters possessed child

-14-

pornography at the time of arrest. S. Rep. No. 99-537 at 9 (1986); see also Janis Wolak et al., Child-Pornography Possessors Arrested in Internet Related Crimes: Findings from the National Juvenile Online Victimization Study 16 (2005) (describing significant overlap between child pornography possession and the sexual victimization of children); Keith F. Durkin, Misuse of the Internet by Pedophiles: Implications for Law Enforcement and Probation Practice, 61 Fed. Probation 14, 15 (1997) (describing "pedophiles' use of the internet to locate children to molest").

We also must consider the fact that many, if not most, federal sex offenders are, like Tom, incarcerated outside the state of their domicile or the state in which they were convicted.[1] Thus, it is not unreasonable to assume that upon completion of any prison term convicted sex offenders will travel outside of the state of incarceration, and may well have the intent to commit a federally prescribed sexual offense. See, e.g., § 2241(c). As we have already explained, Congress is empowered to regulate the channels of interstate commerce and people or things in interstate commerce to prevent their use for immoral and illegal purposes. May, 535 F.3d at 921-22. While we are mindful of the fact that "Congress, unlike the legislatures of the states, cannot sanction for the general welfare," § 4248 appears to be "aimed at preventing the specific harm to the community proscribed by the [federal sex crime] statutes." Perry, 788 F.2d at 109, 111.

B.

Having concluded that § 4248 is necessary and proper to a valid exercise of federal legislative authority, we must still ensure the statute is consistent "with the letter and spirit of the constitution." M'Culloch, 17 U.S. (4 Wheat.) at 421; see also

---

[1]While Tom happened to be incarcerated at the FMC in Rochester, Minnesota a large percentage of federal sex offenders are incarcerated at the FMC in Butner, North Carolina. Cf. Comstock, 551 F.3d 274, 278.

New York v. United States, 505 U.S. 144, 156 (1992) ("Congress exercises its conferred powers subject to the limitations contained in the Constitution. Thus, for example . . . [t]he Tenth Amendment . . . restrains the power of Congress . . . ."). This is particularly so where, as here, the statute under review implicates sexually violent conduct and civil commitment, two areas traditionally within the province of the states. See Raich, 545 U.S. at 42 (O'Connor, J., dissenting) ("The States' core police powers have always included authority to define criminal law and to protect the health, safety, and welfare of their citizens."). The Tenth Amendment provides, "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people," U.S. Const. amend. X, and Tom asserts that § 4248 represents a dramatic encroachment on state authority rather than a legitimate extension of existing federal civil commitment statutes.

Section 4246, enacted as part of the Insanity Defense Reform Act of 1984, see Pub. L. 98-473, Title II, § 403(a), 98 Stat. 2062, is perhaps the closest analog to § 4248, and provides a helpful point of reference. Tom concedes that § 4246 is appropriately deferential to state prerogatives as the case law and legislative history confirm. See, e.g., United States v. Clark, 617 F.2d 180, 184 n.5 (9th Cir. 1980) ("The passage of 18 U.S.C. §§ 4244 and 4246 was not intended to be an invasion of the general field of lunacy, which is reserved to the states."); Comstock, 507 F. Supp. 2d at 545 (explaining that § 4246 "is extremely deferential to the states"); United States v. S.A., 129 F.3d 995, 1000 (8th Cir. 1997) ("[C]ivil commitment under section 4246 occurs 'only in those rare circumstances where a person has no permanent residence or there are no state authorities willing to accept him for commitment.'") (quoting H. R. Rep. No. 98-1030, at 250 (1984), as reprinted in 1984 U.S.C.C.A.N. 3182, 3432).

Tom contends that § 4248 is significantly less deferential to state prerogatives. Under § 4246, for example, civil commitment proceedings can only be initiated if "suitable arrangements for State custody and care are not available."

See § 4246(a). Under § 4248, however, the Attorney General may defer contacting the states until civil commitment proceedings have begun and the individual has been found by a district court to be "sexually dangerous." See § 4248(a). After a person is committed under § 4246, the Attorney General is required to seek state placement for the individual as long as he is in federal custody. See § 4246(d) ("The Attorney General shall continue periodically to exert all reasonable efforts to cause such a State to assume such responsibility for the person's custody, care, and treatment."). In contrast, under § 4248 this requirement is merely implicit. See § 4248(d) ("If, notwithstanding such efforts, neither such State will assume such responsibility, the Attorney General shall place the person for treatment in a suitable facility, until such a State will assume such responsibility . . . .") (emphasis supplied). Tom also points out that § 4246 proceedings can only be initiated against a hospitalized prisoner, whereas § 4248 does not contain such a limitation. He contends that this distinction works a further encroachment upon the states.

We are not persuaded that these differences are significant enough to render § 4248 incompatible with our federalist system. We note first that the fact that a federal law intrudes upon an area of traditional state action does not necessarily indicate impropriety. See Hodel v. Va. Surface Mining and Reclamation Ass'n, Inc., 452 U.S. 264, 292 (1981) ("This Court has upheld as constitutional any number of federal statutes enacted under the commerce power that pre-empt particular exercises of state police power.").

More significantly, like § 4246, § 4248 is a "stop gap" provision designed to guarantee that sexual predators do not enter into the general population merely because they are in federal rather than state custody; many states already provide for the civil commitment of sexually dangerous persons after their term of imprisonment expires.[2] Both § 4246 and § 4248 express a preference for state

---

[2]See, e.g., Iowa Code Ann. §§ 229A.1-16 (West 2006); Minn. Stat. Ann. §§ 253B.02-23 (West 2007); Mo. Ann. Stat. §§ 632.480-513 (West 2006).

custody of civilly committed individuals, an election confirmed by a distinct provision of the Adam Walsh Act. 42 U.S.C. § 16971(a) establishes grants to states "for the purpose of establishing, enhancing, or operating effective civil commitment programs for sexually dangerous persons" which indicates that Congress intends the states rather than the federal government to have primary responsibility for the civil commitment of sexually dangerous individuals. Section 4248, like § 4246, also recognizes the significant state interests involved through its requirement that the Attorney General contact both the state in which the individual was convicted and the state of his domicile to seek to transfer jurisdiction. See § 4248(d). Moreover, the universe of individuals subject to the prescriptions of § 4248 is appropriately circumscribed as we explained above. In sum, § 4248 simply does not upset the delicate federal state balance mandated by the Constitution.

## III.

In enacting § 4248 Congress sought a solution to the substantial danger posed by sex offenders who threaten children and other members of the public with sexual violence. The statute is a responsible exercise of federal power over individuals subject to continuing federal jurisdiction through a period of supervised release following service of a federal sentence. We conclude that § 4248 is a rational and appropriate means to implement comprehensive federal legislation under authority granted it by the Constitution. Accordingly, we reverse the judgment of the district court and remand for a hearing to determine whether Tom is a sexually dangerous person.

_____