UNITED STATES of America,

v.

Steven B. WILKINSON, Respondent.

United States of America

v.

Andrew M. Swarm, Respondent.

Civ. Nos. 07–12061–MLW,
07–12062–MLW.

United States District Court,
D. Massachusetts.

June 22, 2009.

Jennifer A. Serafyn, Jennifer C. Boal, Mark J. Grady, Mark T. Quinlivan, Timothy Q. Feeley, Rayford A. Farquhar, Sara M. Bloom, Timothy Q. Feeley, Eve A. Piemonte–Stacey, United States Attorney's Office, Boston, MA, for United States of America.

Timothy G. Watkins, Ian Gold, Oscar Cruz, Jr., Federal Defender's Office, District of Massachusetts, Boston, MA, for Respondents.

*MEMORANDUM AND ORDER*

WOLF, District Judge.

This memorandum is based upon the transcript of the decision rendered orally on May 26, 2009, in which the court allowed respondents' Motions to Dismiss and issued a stay. This memorandum adds citations, deletes some colloquy, and clarifies some language.

\*　　\*　　\*

## I. INTRODUCTION

Former federal prisoners and respondents in these two related cases, Steven Wilkinson and Andrew Swarm, have moved to dismiss their respective cases seeking their purportedly civil commitments as sexually dangerous persons pursuant to 18 U.S.C. § 4248, the Jimmy Ryce provision of the Adam Walsh Act ("the Act"). They assert that the Act is unconstitutional because it is beyond the power of Congress to legislate. This is a facial challenge to the statute.

This court understands that legislation is presumed to be constitutional. *See, e.g. United States v. Morrison,* 529 U.S. 598, 607, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000). To be invalidated, there must be a "plain showing that Congress has exceeded its constitutional bounds." *Id.* That high standard has been met in these cases.

The court will, however, stay its order dismissing these cases based on the unconstitutionality of the statute pending appeal. The court may reconsider the stay if it decides that Wilkinson is entitled to relief on the merits, or if the Supreme Court denies the petition for certiorari in *United States v. Comstock,* or affirms the Fourth Circuit's decision in that case. 551 F.3d 274 (4th Cir.2009), *aff'g* 507 F.Supp.2d 522, 540 (E.D.N.C.2007).

## II. THE FACTS

Andrew Swarm was in Bureau of Prisons' custody serving a four month federal term of imprisonment following the revocation of his supervised release. His original sentence was 74 months in custody following his conviction for receipt and possession of child pornography in violation of 18 U.S.C. § 2252, and manufacturing marijuana in violation of 21 U.S.C. § 841. He was certified as a sexually dangerous person for purposes of § 4248 on February 20, 2007, one day before he was scheduled to be released. Swarm had a prior conviction in New York state court for attempted sexual abuse and second degree attempted endangering the welfare of a child.

Steven B. Wilkinson was in Bureau of Prisons' custody serving a 189 month federal term of imprisonment, which is scheduled to be followed by a five year term of supervised release, as a result of a conviction for the possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1), 924(e)(1). He was certified as a sexually dangerous person for purposes of § 4248 on February 13, 2008, the day he was scheduled to be released. He has prior convictions for rape, statutory rape and indecent assault.

As described in *Comstock:*

> The only portion of the Act at issue here, § 4248, authorizes the federal government to civilly commit, in a federal facility, any 'sexually dangerous' person 'in the custody' of the Bureau of Prisons'—even *after* that person has completed his entire prison sentence.` To initiate commitment under § 4248, the Attorney General need only certify that a person within federal custody is 'sexually dangerous.' Such a certification, when filed with the district court in the jurisdiction in which the federal government holds a person, automatically stays that person's release from prison. In

the cases at issue here, this stay has extended federal confinement well past the end of any prison term. Thus, pursuant to § 4248, the federal government has civilly confined former federal prisoners without proof that they have committed any new offense. Moreover, § 4248 empowers the Attorney General to prolong federal detention in this manner without presenting evidence or making any preliminary showing; the statute only requires that the certification contain an allegation of dangerousness. The statute defines a 'sexually dangerous person' to be one who 'has engaged or attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to others,' and who suffers from a severe mental illness such that he would 'have serious difficulty in refraining from sexually violent conduct or child molestation if released.' However, neither 'sexually violent conduct' nor 'child molestation' are terms defined by the statute.

> After the Attorney General files the certification, § 4248 directs the district court to adjudicate a person's alleged sexual dangerousness. If the district court finds the person to be sexually dangerous by clear and convincing evidence, the court must commit the person to federal custody. Only then does § 4248 direct the Attorney General to make 'all reasonable efforts' to transfer responsibility for the person to an appropriate *state* authority. Unless and until a state assumes this responsibility, § 4248 authorizes federal confinement for as long as the person remains 'sexually dangerous.'

551 F.3d at 276–77 (internal citations omitted)(emphasis in original).

## III. DISCUSSION

The issue of whether the Act is constitutional has divided the two circuits that

have decided it and judges of the United States District Court for the District of Massachusetts as well. The Fourth Circuit in *Comstock,* and Judge George O'Toole in *United States v. Volungus,* 599 F.Supp.2d 68 (D.Mass.2009), have found the Act is unconstitutional. The Eighth Circuit in *United States v. Tom,* 565 F.3d 497 (8th Cir.2009), Judge Patti Saris in *United States v. Shields,* 522 F.Supp.2d 317 (D.Mass.2007), and Judge Joseph Tauro in *United States v. Carta,* 503 F.Supp.2d 405 (D.Mass.2007), have found the Act is constitutional. This court finds that the reasoning of *Comstock* and *Volungus* is more persuasive.

The court will not reiterate all of the reasoning of those decisions. It will, however, emphasize certain points persuasively made in *Comstock* and *Volungus,* and also address some other issues argued by the government in the cases before it.

At the May 21, 2009 hearing, the government argued that Congress had the power to enact § 4248 pursuant to two provisions of Article I, Section 8, of the Constitution. Transcript of May 21, 2009 Hearing ("Tr.") 5–6. The first relied upon by the government is the Commerce Clause, which authorizes Congress to "regulate Commerce ... among the several States." U.S. Const. art. I, § 8. The second provision relied upon by the government is the Necessary and Proper Clause, which provides that Congress has the power "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." *Id.*

At the May 21, 2009 hearing, the government acknowledged that the power to legislate provided by the Necessary and Proper Clause must be rooted in an enumerated power in Article I or some other Article of the Constitution. Tr. 5. As the Fourth Circuit described in *Comstock,* 551 F.3d at 278–279, this is correct. The correctness of this conclusion is also indicated by the Supreme Court's decision in *Kinsella v. United States ex rel. Singleton,* 361 U.S. 234, 247, 80 S.Ct. 297, 4 L.Ed.2d 268 (1960), and by Professor Lawrence Tribe's discussion in his treatise. *See* Laurence H. Tribe, *American Constitutional Law,* 805 (3rd Ed. 2000).

■ The government also acknowledged that the power of the federal government to operate a penal system is not itself an enumerated power. Tr. 7–9. Rather it is a power implied by the enumerated power to legislate, and is related to the implied powers to prosecute and punish crimes, which are recognized as implied powers in *Tom,* 565 F.3d 497, 502 (8th Cir.2009)(citing *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 393, 60 S.Ct. 907, 84 L.Ed. 1263 (1940)). Therefore, contrary to the government's contention in its original memorandum opposing the motion to dismiss, Gov. Memo. in Opp'n to Mot. to Dismiss at 8–10, the power to operate a penal system is not itself a foundation for an exercise of Congress's authority under the Necessary and Proper Clause.

Apparently in contrast to the arguments made in *Comstock* and *Tom,* the government argues here that the test for deciding Wilkinson and Swarm's facial challenges to § 4248 is provided by the Supreme Court's decision in *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), rather than by the Supreme Court's decisions in *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), and *Morrison,* 529 U.S. at 598, 120 S.Ct. 1740. *See* Suppl. Gov. Memo. in Opp'n to Mot. to Dismiss at 2–6. *Lopez* and *Morrison* were used as the framework to decide *Comstock* and *Tom,* and the other analogous cases. *See*

*Comstock,* 551 F.3d at 279–280; *Tom,* 565 F.3d at 501–503.

*Salerno* involved a Substantive Due Process and Eighth Amendment facial challenge to the Bail Reform Act. 481 U.S. at 746, 107 S.Ct. 2095. The Supreme Court wrote: "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. The fact that [a federal statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since [the Supreme Court has] not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." *Id.* at 745, 107 S.Ct. 2095.

In *United States v. Sampson,* 275 F.Supp.2d 49, 58 (D.Mass.2003), this court discussed the controversy on the Supreme Court, and elsewhere, regarding the validity of the *Salerno* test. The court concluded that it was not the proper test for determining Sampson's Eighth Amendment challenge to the Federal Death Penalty Act on the ground that there was an undue risk of executing the innocent. *Id.* at 58–59.

Since 2003, the *Salerno* standard has been applied by the First Circuit in cases involving the Equal Protection Clause and claims of a violation of the right to Substantive Due Process. *See Comfort v. Lynn School Committee,* 418 F.3d 1, 6 (1st Cir.2005); *Cook v. Gates,* 528 F.3d 42, 48 (1st Cir.2008); *Dutil v. Murphy,* 550 F.3d 154, 156 (1st Cir.2008). The First Circuit has not applied the *Salerno* test, or any other test, in a Commerce Clause or Necessary and Proper Clause case. Two other circuits have applied *Salerno* to Commerce Clause cases. *See Nebraska v. EPA,* 331 F.3d 995, 998 (D.C.Cir.2003); *Rancho Viejo, LLC v. Norton,* 323 F.3d 1062, 1077–78 (D.C.Cir.2003); *United*

*States v. Sage,* 92 F.3d 101, 106 (2nd Cir. 1996).

However, the Supreme Court has not applied the *Salerno* test to every facial challenge to every statute. For example, the Court has not applied the *Salerno* test to facial challenges in abortion cases. *See Planned Parenthood of Southeastern Pa. v. Casey,* 505 U.S. 833, 895, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992); *Janklow v. Planned Parenthood, Sioux Falls Clinic,* 517 U.S. 1174, 1175–76, 116 S.Ct. 1582, 134 L.Ed.2d 679 (1996).

Most significantly, the Supreme Court has not applied the *Salerno* test to facial challenges in Commerce Clause cases at least since *Lopez.* Although the term "facial" is not used in the Court's decisions in *Lopez* and *Morrison,* it is clear that those two cases involved facial challenges. Generally, as in the case of *Gonzales v. Raich,* 545 U.S. 1, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005), Commerce Clause and Necessary and Proper Clause cases involve as-applied challenges.

As the First Circuit has written, "*Lopez* and *Morrison* involved facial challenges to Federal statutes." *United States v. Nascimento,* 491 F.3d 25, 41 (1st Cir.2007). This conclusion was evidently based on the statements in *Lopez* that: "Respondent moved to dismiss his federal indictment on the ground that § 922(q) 'is unconstitutional as it is beyond the power of Congress to legislate control over our public schools.'" 514 U.S. at 551, 115 S.Ct. 1624. Similarly, in *Morrison,* the Supreme Court wrote: "Morrison ... moved to dismiss ... on the [ground] that ... § 13981's civil remedy is unconstitutional." 529 U.S. at 604, 120 S.Ct. 1740. In *Raich,* the Supreme Court noted that the plaintiffs acknowledged the general validity of the federal statute at issue, but alleged that it is unconstitutional as applied to their solely intrastate activity, in contrast to "both *Lopez* and *Morri-*

*son* [where] the parties asserted that a particular statute or provision fell outside Congress' commerce power in its entirety." 545 U.S. at 23, 125 S.Ct. 2195.

█ Therefore, the court finds that the courts in *Comstock* and *Tom*, among others, were correct in using *Lopez* and *Morrison* as the framework for analyzing the challenges to § 4248. Applying the *Lopez/Morrison* framework and the pertinent discussion in *Raich*, the court finds that the Commerce Clause is not itself, or alone, a source of authority for Congress to enact § 4248. Indeed, in *Tom*, the Eighth Circuit did not rely on the Commerce Clause in finding § 4248 to be constitutional.

In 1937, Felix Frankfurter wrote: "If the Thames is 'liquid history,' the Constitution of the United States is most significantly not a document but a stream of history. And the Supreme Court has directed the stream." Felix Frankfurter, *The Commerce Clause* 2 (1937). With regard to the Commerce Clause, that stream has not been straight. Rather, it has been bending.

As the Supreme Court has written, its "interpretation of the Commerce Clause has changed as our Nation has developed." *Morrison*, 529 U.S. at 607, 120 S.Ct. 1740. *Lopez* and *Morrison* represent a change in Commerce Clause jurisprudence. They set limits to the Commerce Clause power in cases involving noneconomic activity in order to preserve the distinction between what is local and what is national in order to prevent the creation of "a completely centralized government." *Lopez*, 514 U.S. at 557, 115 S.Ct. 1624 (quoting *N.L.R.B. v. Jones and Laughlin Steel Corp.*, 301 U.S. 1, 37, 57 S.Ct. 615, 81 L.Ed. 893 (1937)). Section 4248 deals with noneconomic activity, the type of activity addressed in *Lopez* and *Morrison*. *See Comstock*, 551 F.3d at 279–80.

█ Under the Commerce Clause, Congress may regulate: (1) the channels of interstate commerce; (2) instrumentalities of, or persons or things in interstate commerce; and (3) activities that substantially affect interstate commerce. *Lopez*, 514 U.S. at 558–559, 115 S.Ct. 1624; *Morrison*, 529 U.S. at 608–09, 120 S.Ct. 1740. Section 4248 does not regulate the channels of interstate commerce. Nor is it concerned with the instrumentalities of, or persons or things in, interstate commerce. Therefore, to be found constitutional under the Commerce Clause, § 4248 must involve activity that substantially affects interstate commerce. *Comstock*, 551 F.3d at 279.

In determining whether the activities at issue substantially affect interstate commerce, the court may not look at the cumulative impact of those activities. As Judge Michael Boudin wrote in his concurrence in *Nascimento:* "The cumulative impact theory had been well established in commerce clause cases since *Wickard v. Filburn* [317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942) ] [in 1942]. In *Lopez* and *Morrison*, the Supreme Court restricted the theory to cases of economic activity." 491 F.3d at 52 (citing *Lopez*, 514 U.S. at 561, 115 S.Ct. 1624; *Morrison*, 529 U.S. at 611, 120 S.Ct. 1740). Professor Erwin Chemerinsky agrees with Judge Boudin on the distinction between economic and noneconomic activity. *See* Erwin Chemerinsky, *The Assumptions of Federalism*, 58 Stan. L. Rev. 1763, 1779–80 (2006).

Section 4248 is analogous to the statutes at issue in *Lopez* and *Morrison*. It is a statute that, by its terms, has nothing to do with commerce. In *Lopez*, the statute addressed the possession of firearms in the vicinity of schools. 514 U.S. at 551, 115 S.Ct. 1624. In *Morrison*, the statute at issue addressed violence against women. 529 U.S. at 605–07, 120 S.Ct. 1740. As in *Lopez*, 514 U.S. at 561, 115 S.Ct. 1624,

§ 4248 is not "an essential part of a larger regulation of economic activity, in which the regulatory scheme could·be undercut unless the intrastate activity were regulated." *See Comstock,* 551 F.3d at 280, n. 6.

As in *Lopez* and *Morrison,* in § 4248, there is "no jurisdictional element which would ensure, through case-by-case inquiry, that the [activity] in question affects interstate commerce." *Lopez,* 514 U.S. at 561, 115 S.Ct. 1624. *See also Morrison,* 529 U.S. at 611–612, 120 S.Ct. 1740.

As the government acknowledged at the May 21, 2009 hearing, as in *Lopez,* § 4248 contains no Congressional findings regarding the effects of prisoners who are potentially sexually violent or dangerous on interstate commerce, Tr. 31–32, which was a consideration noted in *Lopez. See* 514 U.S. at 562, 115 S.Ct. 1624. In addition, the government acknowledged on May 21, 2009, that there is not any Congressional finding that § 4248 is necessary to preserve the efficacy of any statute or regulatory scheme that exists as a exercise of Congressional power under the Commerce Clause. Tr. 31–32. Indeed, no legislative history discussing these issues has been identified.

As in *Lopez* and *Morrison,* the nature of the activity being regulated is not economic. *Lopez* noted that the firearms statute at issue did not implicate economic activity. *See* 514 U.S. at 567, 115 S.Ct. 1624. The Supreme Court made the same point with regard to the Violence Against Women statute at issue in *Morrison. See* 529 U.S. at 613, 120 S.Ct. 1740. *Comstock* makes a comparable point with regard to § 4248. *See* 551 F.3d at 280.

Finally, as in *Morrison* and *Lopez,* the activity that § 4248 seeks to regulate is an area that is traditionally left to the states in our federal form of government. *See Comstock,* 551 F.3d at 280. Therefore, the Commerce Clause itself is not an enumer- ated power on which § 4248 can be properly based.

The government argues that § 4248 is justifiably based on the Commerce Clause and the Necessary and Proper Cause of Article I, Section 8. The classic expression of the Necessary and Proper Clause is in *M'Culloch v. Maryland,* where Chief Justice Marshall wrote, "Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consistent with the letter and spirit of the constitution, are constitutional." 17 U.S. 316, 421, 4 Wheat. 316, 4 L.Ed. 579 (1819).

As Professor Tribe has written, "The exercise by Congress of power ancillary to an enumerated source of national authority is constitutionally valid, so long as the ancillary power neither conflicts with external limitations—such as those of the Bill of Rights and of federalism—nor renders Congress' powers limitless." Laurence H. Tribe, *American Constitutional Law,* 798– 99 (3rd Ed. 2000). As Professor Tribe went on to explain, however, this implied power has limits. "The power to do what is Necessary and Proper for carrying into execution another more specific power is not and must not be confused with a power to do whatever might bear some possible relationship to one of the more specific powers." *Id.* at 801.

The government argues that Congress has the power to enact statutes prohibiting and punishing sexual violence that involve channels or instrumentalities of interstate commerce, or people traveling in interstate commerce, or substantially affects interstate commerce. *See* Gov. Memo. in Opp'n to Mot. to Dismiss at 11–12. The government quotes the decision in *United States v. Perry,* in which the Third Circuit upheld the Bail Reform Act authorization of pretrial detention based on future dangerous-

ness on the theory that because Congress had the authority to proscribe four particular federal crimes, "it has the auxiliary authority, under the necessary and proper clause, to resort to civil commitment to prevent their occurrence." 788 F.2d 100, 111 (3d Cir.1986).

Acknowledging that § 4248 does not require that sexual dangerousness take the form of a likely violation of a federal criminal statute to justify the commitment, the government contends that it is necessary and proper for the statute to sweep broadly in order to prevent federal crimes. *See* May 21, 2009 Tr. at 12–13, 38. The government notes Justice Scalia's statement, in concurring in *Raich,* that under the Necessary and Proper Clause, "Congress may regulate even noneconomic local activity if that regulation is a necessary part of a more general regulation of interstate commerce." 545 U.S. at 37, 125 S.Ct. 2195.

The Necessary and Proper Clause justification for the statutes at issue was evidently not argued in *Lopez* and *Morrison.* The Necessary and Proper Clause is not discussed in those decisions. If the government's argument is valid with regard to § 4248, it would apparently have been equally applicable to the federal prohibition of guns within 1000 feet of a school, which was at issue in *Lopez.*

In *Lopez* and *Morrison,* the Supreme Court reaffirmed that national power is not limitless, and that the constitutional distinction between national authority and local authority is meaningful. In *Lopez* the Supreme Court wrote:

> To uphold the government's contentions here, we would have to pile inference upon inference in a manner that would bid fair to convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States. Admittedly, some of our prior cases have taken steps down that road, giving great deference to congressional action. The broad language in these opinions has suggested the possibility of additional expansion, but we decline here to proceed any further. To do so would require us to conclude that the Constitution's enumeration of powers does not presuppose something not enumerated and that there will never be a distinction between what is truly national and what is truly local. This we are unwilling to do.

514 U.S. at 567–568, 115 S.Ct. 1624 (internal citations omitted).

Accepting the government's Necessary and Proper Clause argument in the cases before this court would effectively eviscerate the distinction between what is truly national and what is truly local that the Supreme Court reaffirmed and reemphasized in *Lopez* and *Morrison.* A district court may not do that.

The court finds the analysis of the Necessary and Proper Clause issues of the Fourth Circuit in *Comstock,* 551 F.3d at 280–85, and of Judge O'Toole in *Volungus,* 599 F.Supp.2d at 73–77, to be more persuasive than the reasoning of the Eighth Circuit in Tom and Judge Saris's resolution of what she characterized as a "close question" in *Shields,* 522 F.Supp.2d at 326–28. As indicated earlier, the court will not repeat everything persuasively explained in *Comstock* and *Volungus.* However, there are some similar and some additional points worthy of being stated.

Section 4248 is not the type of statute that Justice Scalia was addressing in *Raich.* Justice Scalia wrote that, "Congress may regulate ... noneconomic local activity if that regulation is a necessary part of a more general regulation of interstate commerce," such as the intrastate production or distribution of marijuana that was at issue in *Raich,* 545 U.S. at 37,

39, 125 S.Ct. 2195. Justice Scalia went on to state:

> Unlike the power to regulate activities that have a substantial effect on interstate commerce, the power to enact laws enabling effective regulation of interstate commerce can only be exercised in conjunction with congressional regulation of an interstate market, and it extends only to those measures necessary to make the interstate regulation effective. As *Lopez* itself states, and as the Court affirms today, Congress may regulate noneconomic intrastate activities only where the failure to do so "could ... undercut" its regulation of interstate commerce. This is not a power that threatens to obliterate the line between "what is truly national and what is truly local."

*Id.* at 38, 125 S.Ct. 2195 (quoting *Lopez,* 514 U.S. at 567–568, 115 S.Ct. 1624).

In contrast to *Raich,* in the present cases there is no comprehensive scheme of regulation of interstate commerce threatened. There are federal statutes such as 18 U.S.C. § 2252, one of the statutes under which Swarm was convicted, that prohibit and punish possession of child pornography that has been transported in interstate commerce, shipped in interstate commerce, or affects interstate commerce. However, § 4248 contains no Congressional finding that statutes like § 2252 would be undercut without the power to commit provided by the Act.

In *Tom,* the Eighth Circuit speculated that some federal prisoners would travel outside of the state of their incarceration and may have the intent to commit a federal sexual offense. However, there is no Congressional finding on this issue. Nor is there any cited legislative history concerning the possible effect on interstate commerce of activity covered by § 4248. In essence, it does not appear that in enacting § 4248 Congress considered or relied upon any possible effect on interstate commerce.

Rather, it appears, as the government argues, that § 4248 was intended to fill a gap in the federal commitment statutes that include § 4246. *See* Gov. Memo. in Opp'n to Mot. to Dismiss at 8–9. Among other things, § 4246 permits the civil commitment of federal defendants who have been charged, but found to be incompetent to stand trial. In *Greenwood v. United States,* 350 U.S. 366, 375, 76 S.Ct. 410, 100 L.Ed. 412 (1956), the Supreme Court held that such a defendant's civil detention is permissible to prevent the frustration of the federal power to prosecute, which was not exhausted. *Greenwood* did not root the power to detain in the Commerce Clause. *Id.* In addition, *Greenwood* did not address the constitutionality of committing a prisoner whose sentence was about to expire, which at the time of the *Greenwood* decision was addressed in § 4247 and is now one of the situations addressed in § 4246. *Id.* at 374–75, 76 S.Ct. 410.

As the Third Circuit wrote in *Perry:* "What *Greenwood* teaches is that the federal government may resort to civil commitment when such commitment is necessary and proper to the exercise of some specific federal authority. Congress may not, however, authorize commitment simply to protect the general welfare of the community at large." 788 F.2d at 110. Section 4248, however, appears to be an effort to protect the general welfare of the community at large. As stated in *Comstock,* most crimes of sexual violence violate state law rather than federal law and § 4248 "sweeps far too broadly to be a valid effort to prevent *federal* criminal activity." 551 F.3d at 282.

This court agrees with the Fourth Circuit, which quoted *Lopez* in concluding that: "At its core, the [g]overnment's ar-

gument attempts to 'pile inference upon inference' so as to 'convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States.'" *Comstock,* 551 F.3d at 283 (quoting *Lopez,* 514 U.S. at 567, 115 S.Ct. 1624). This court would modify that slightly to say, "congressional authority under the Commerce Clause and the Necessary and Proper Clause". *See also Volungus,* 599 F.Supp.2d at 77.

In *Shields,* Judge Saris resolved what she called the "close issue" of whether the Necessary and Proper Clause authorizes the enactment of § 4248 in part because she found that, "It is difficult to accept the proposition that the federal government does not have the authority to prevent the release into the community of a sexually dangerous person in its custody who is likely to commit future federal and/or state sex crimes involving harm to another person, especially a child." 522 F.Supp.2d at 326. However, releasing a sexually dangerous person to the community is not the only, or the likely, result if § 4248 is unconstitutional.

First, in the past several years, in cases where the defendant has a history of sexual violence or unlawful involvement with child pornography, conditions of Supervised Release intended to reduce the risk of a repetition of those crimes have been increasingly proposed by the Probation Department and imposed by this court and, the court expects, other district courts at sentencing. These conditions include sex offender testing and treatment, including in-patient treatment when prescribed by Probation. These conditions also include a requirement of sex offender registration in the state in which the defendant resides.

Conditions of Supervised Release now also regularly prohibit unsupervised contact with anyone under age eighteen. They also prohibit possessing or using a computer except for legitimate work-related purposes. In addition, the conditions regularly include a requirement of periodic polygraph tests to determine whether the relevant conditions of Supervised Release are being obeyed. Therefore, Supervised Release provides a means of addressing the risk that sexually dangerous prisoners might pose if released unconditionally.

In addition, if while in the custody of the Bureau of Prisons a prisoner appears to be sexually dangerous, the Bureau of Prisons can seek civil commitment of the prisoner by a state. As the Fourth Circuit explained in *Comstock:*

> If the federal government has serious concerns about the dangerousness of a person due to be released from federal prison, it can notify state authorities, who may use their well-settled police and parens patriae powers to pursue civil commitment under state law.

> Moreover, if the relevant state authorities prove reluctant to take charge of such persons, the government is not without recourse. The federal government may, for example, wield its spending power to encourage state action, *see* U.S. Const. art. I, § 8, cl. 1 (granting Congress the power to allocate funds to promote the "general Welfare"), by providing funding to state institutions for this purpose.

551 F.3d at 284. Indeed, the Adam Walsh Act, in 42 U.S.C. § 16971(a), provides for federal grants to the states for "establishing, enhancing and operating effective civil commitment programs for sexually dangerous persons." *Id.*

Moreover, if no state were willing to deal with a prisoner believed by the Bureau of Prisons to be sexually dangerous, the Department of Justice could request a hearing on the first day of the defendant's Supervised Release and ask the court to alter the conditions of Supervised Release

to protect against that perceived danger with the sort of conditions of Supervised Release discussed previously. *See* 18 U.S.C. § 3583(e)(2); F.R.C.P. 32(c)(1).

Therefore, there are lawful ways to address the dangers about which Judge Saris was concerned if § 4248 is unconstitutional.

The government also argues that if § 4248 is unconstitutional, § 4246 would also be invalid. In part, § 4246 now permits the civil commitment of a federal prisoner to the custody of the Bureau of Prisons if his sentence is about to expire, his release would create a serious risk of injury to another person or property, and suitable arrangements for state custody of the person are shown not to be available.

As the Fourth Circuit noted in *Comstock*, 551 F.3d at 284, n. 10, § 4246 is not at issue in cases concerning § 4248, including the two cases now before this court. However, the court notes that § 4246 differs from § 4248(d) in one respect that may be material. Section 4248(d) contemplates that after a federal court finds a prisoner to be sexually dangerous and commits him to the custody of the Attorney General, the Attorney General will release him to state custody if a state will assume responsibility for the person committed. A state presented with a committed person it knows will not be released from federal custody if it refuses to assume responsibility for the expense of keeping and treating him may refuse to do so. The state might not, however, refuse to take custody of the prisoner if there was a real risk that he would be released and be a danger to the community.

Section 4246 permits the commitment of a federal prisoner only if the Attorney General has attempted to place that person in state custody and failed. Section 4246 makes the federal government the custodian of last resort. As a practical matter, § 4248 may make the federal government the custodian of first resort. This would be inconsistent with what has been the historically local, not national, character of civil commitment. *See Comstock*, 551 F.3d at 280.

As explained earlier, *Lopez* and *Morrison* altered the stream of Commerce Clause jurisprudence in cases involving noneconomic activity, such as the cases now before this court. *Lopez* and *Morrison* reemphasized and sought to preserve the distinction between what is truly local and what is truly national in order to prevent the creation of a completely centralized form of government. *See Lopez*, 514 U.S. at 557, 115 S.Ct. 1624; *Morrison*, 529 U.S. at 608, 120 S.Ct. 1740.

The government's rationale for finding § 4248 constitutional as an exercise of congressional power under the Commerce Clause is inconsistent with the reasoning of *Lopez* and *Morrison*. If correct, the government's reliance on the Necessary and Proper Clause would undermine the historic distinction between state and federal authority reaffirmed in *Lopez* and *Morrison*. Perhaps the perceived necessities of this time will prompt the Supreme Court to redirect the stream of constitutional history again. However, unless and until it does, *Lopez* and *Morrison* teach this court that § 4248 is unconstitutional because its enactment exceeded Congress's powers under the Commerce Clause and Necessary and Proper Clause of Article I, Section 8.

## IV. THE STAY

On May 21, 2009, the government informed the court that it intends to appeal any adverse decision in these cases. The court finds that a stay pending appeal is appropriate concerning the decision that § 4248 is unconstitutional. The relevant factors in deciding the propriety of the stay are stated in *Hilton v. Braunskill*,

481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987), and discussed by this court in *Canterbury Liquors & Pantry v. Sullivan,* 999 F.Supp. 144, 149 (D.Mass. 1998).

The appeal of this decision will raise serious and difficult issues on which two circuits have split. Swarm and Wilkinson, rather than the government, will be irreparably injured by a stay if § 4248 is ultimately held to be unconstitutional. They will have been unlawfully deprived of their liberty during the pendency of the stay. However, there is a risk that the government—and the public that it represents—will be injured if Swarm and Wilkinson are released now. Swarm and Wilkinson have each been certified by the Bureau of Prisons to be sexually dangerous. Whether that certification is justified has not been decided by this court. Thus, it is appropriate to recognize that some risk to the community would be created by releasing Wilkinson and/or Swarm at this time.

With regard to the public interest, the presumption of constitutionality is an equity favoring the government. *See Walters v. National Association of Radiation Survivors,* 468 U.S. 1323, 1324, 105 S.Ct. 11, 82 L.Ed.2d 908 (1984). Indeed, the Supreme Court cited *Walters* in staying the Fourth Circuit's order in *Comstock. United States v. Comstock,* No. 08A863 (U.S., April 3, 2009). The Supreme Court's decision to stay *Comstock* clearly communicates that the Supreme Court believes that at least a temporary stay in the cases before this court is justified. *Id.* This court expects the First Circuit would agree. Therefore, a stay is being issued.

However, if requested, the court will reconsider the propriety of the stay if there is a material change in circumstances. Such a change might include the Supreme Court lifting the stay in *Comstock,* either by denying the petition for certiorari or affirming *Comstock* on the merits. In addition, a finding by this court that Wilkinson and/or Swarm have not been proven to be sexually dangerous might be such a material change in circumstances. More specifically, such a finding might alter the balance of hardships, particularly the court's assessment of the risk to the community as balanced against the irreparable injury that an unlawful extension of the detention of Wilkinson or Swarm may entail.

## V. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Respondents Motions to Dismiss (Wilkinson Docket No. 36; Swarm Docket No. 33) are ALLOWED.

2. This case is STAYED.